YARRUT, Judge.
Plaintiff filed this suit on December 3, 1963, against his employer to recover workmen’s compensation for 400 weeks at $35.00 per week, plus interest, plus statutory penalties and attorney’s fees.
Defendant first pled prescription of one-year and then denied that Plaintiff suffered the injury complained of in the course of his employment.
The district judge heard the case on the merits and awarded Plaintiff compensation at the rate of $10.00 per week for 100 weeks, plus 5% interest, $2,094.60 medical expenses and $200.00 expert medical fees; disallowed statutory penalties and attorney’s fees; but did not pass upon Defendant’s plea of prescription.
Defendant appealed, asking for the sustaining of its plea of prescription, or for complete reversal of the judgment; and Plaintiff appealed for an increase of compensation of $35.00 per week for 400 weeks, plus interest, penalties and attorney’s fees.
Plaintiff was for many years employed as a heavy truck driver by Defendant on long distance hauls, and claims he suffered disabling injuries, while so engaged, on June 8 and October 20, 1962, both more than a year prior to the filing of this suit. Plaintiff was paid no workmen’s compensation and no medical expenses.
LSA-R.S. 23:1209, Workmen’s Compensation Statute, fixes the prescription, viz:
“In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter or unless within one year after the accident proceedings have been begun as provided in Parts III *371 and IV of this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment. Also, ■where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
Starting in 1958, Plaintiff suffered a number of medical disorders, such as ulcers and rectal-prostatic troubles, as well as a number of injuries. In 1960 he had a rather serious accident, resulting in a fractured skull. Dr. John Andrews treated him for this injury and testified it could well have caused or initiated a degenerative disc process in the cervical area. In February, 1961, he sustained an injury remarkably similar to his alleged injury of June, 1962, when his left foot slipped from the running board of the truck while cleaning the rearview mirror, causing him to fall and strike his face. After the 1961 accident, he was hospitalized and had plastic surgery. Thereafter, he complained of soreness in the neck and shoulder regions, even after returning to work, noting an aching discomfort in both the neck and shoulders. In May, 1961, he was treated extensively by Dr. Rourke of the Fisher-Raeburn Clinic, complaining at that time of pain in the cervical-upper thoracic area of the back, with the pain radiating down the right arm to the elbow. He told Dr. Rourke he had similar pains a few years previously, and had been seen by Dr. Howard Karr, a New Orleans neurosurgeon. On at least four visits to Dr. Rourke’s office he was given analgesics and cervical traction as well as diathermy treatments.
The next two accidents are those made the basis of this suit; i. e., June 8, 1962 and October 20, 1962, following which he consulted on one occasion one doctor at Ochsner Clinic for the June 8th injury. Following the October 20th accident he was seen briefly by Dr. Bullock, a company physician, in Shreveport, whose report is contained in the record. Thereafter, until March of 1963, he saw no other doctor.
After the October, 1962 injury, Plaintiff testified he only worked on a “partial” basis, and felt so bad that he finally went to a physician in March, 1963 and was placed in the West Jefferson Hospital, where he was found to have ulcers, The two physicians who treated him there did not testify at the trial, though later X-rays of his neck disclosed he had two or three ruptured cervical discs for which Dr. Raeburn Llewellyn, who was called in consultation, later performed surgery on July 5, 1963.
Regarding the two alleged accidents made the basis of this suit, it is interesting to note that Plaintiff himself attached no particular significance to the June, 1962 injury, and emphasized that the difficulties he complained of, which led to his hospitalization, as weakness, chest pains and tendency toward dropping objects, only began after the October, 1962 accident. He further pointed out that, after the June, 1962 accident, he had not missed any work whatsoever, and that he had no neck pain at all.
The June, 1962 accident was never reported to Defendant, nor to any of its employees, nor was it entered by Plaintiff in his driver’s “log” which the Defendant required all drivers to do. Because of his previous accidents, Plaintiff well knew the company rule that any accident or injury must be entered in the “log.” Mr. Giblin, supervisor of truck drivers, testified he knew nothing whatever of the accident; that he made a search of the records and interviewed company personnel but could find no record of the June, 1962 accident.
Despite the fact he told the trial judge that the June accident was of no real signif *372 icance, Plaintiff gave an entirely different story, apparently, to Dr. Llewellyn, the neurosurg-eon who was, in effect, the treating physician in this case. The history given to Dr. Llewellyn by Plaintiff was that he had suffered a marked aggravation of his previous mild, chronic neck complaints from the June, 1962 accident and that, thereafter, he had pain extending into the right arm and required a considerable amount of medicine to permit him to continue his work. At the trial, Plaintiff testified "except for— I mean I wasn’t sore in my neck. I had no complaint about that, sir.” It is a fact that Plaintiff visited Ochsner Clinic June 9th, the day after his alleged accident. There he was found to have a swollen and red thumb and a tender knee. X-rays were made of the right hand and of the knee. There is not one word in the report as to any difficulty with respect to the back, chest or neck. Dr. Llewellyn and Dr. John A. Colclough, a neurosurgeon who examined Plaintiff after his operation, never checked the records at Ochsner Clinic but only relied on the history given them by Plaintiff, almost a year later.
The Ochsner Clinic report clearly indicates that the only injury Plaintiff suffered was to the thumb and knee.
It was obvious that Plaintiff was attempting to impress the district court with the importance and significance of the October 20, 1962 accident, and that it was after this accident that he insisted he began having difficulties with his chest and encountered trouble in grasping objects. When he was finally hospitalized, it was found that he had ulcers. Plaintiff neither alleged nor testified that his ulcer condition was related to either of the accidents.
Neither Dr. Andrews, who saw Plaintiff again in June, 1963, nor Dr. Llewellyn, the treating physician, were even advised by Plaintiff of the occurrence of the October accident.
Dr. A. A. Bullock, the Shreveport physician consulted by Plaintiff on October 20, 1962, in his report indicated that Plaintiff sustained an injury to the left side of his chest when he “fell against a car door.” X-rays of the left chest only were taken, and Plaintiff was given “symptomatic treatment.” Plaintiff did report this injury to Defendant, and the person who prepared the report stated Plaintiff himself reported he “fell against the cab door while fixing mirror; injury to left ribs.” Nowhere in the report is there any indication that Plaintiff sustained back or neck injury, or radiation of pain into either upper extremity.
 The burden is on Plaintiff in a compensation case to establish his case by a preponderance of the evidence. In his comments at the end of the transcript, the trial judge indicated that the Plaintiff had carried a “bare” preponderance of the evidence. However, we cannot agree that the causal connection between Plaintiff’s alleged accidents and his disability is substantiated, by a preponderance of the evidence. Plaintiff contradicted himself in the histories given various physicians, and in his testimony during the trial. The injury Plaintiff emphasized at the trial was one he did not mention to the physician who treated him in the past; nor did he mention it to the treating physician in this case. These two doctors testified they were completely unaware of the occurrence of the October, 1962 accident. On the other hand, though Plaintiff emphasized the June, 1962 accident to these doctors and to others, he admitted he did not have any neck pain or symptoms subsequent to the accident and that he was able, without difficulty, to work every day.
The right to recover and the extent thereof depends upon the medical evidence. The Ochsner Hospital reports as to the June 8, 1962 accident, and Dr. Bullock’s report on the October 20, 1962 accident, indicate clearly that there was no involvement whatever with the cervical region but, to the contrary, the only affected parts of the body were the finger, the right hand, and the knee, in the June, 1962 accident, and the *373 left ribs of the claimant in the October, 1962 accident. However, Dr. Llewellyn, who operated on Plaintiff for ruptured discs and was under the impression that Plaintiff suffered his last accident in June of 1962, testified that Plaintiff’s on-the-job injuries could have been responsible for this condition. Dr. Colclough, who accepted Plaintiff’s versions of both the June and October, 1962 accidents, was of the opinion that they reactivated a dormant condition causing Plaintiff’s disability. Both Dr. Colclough and Dr. Emile A. Bertucci, who referred Plaintiff to Dr. Colclough, testified Plaintiff could not resume his regular work. However, in the opinion of Dr. Llewellyn, the treating physician, Plaintiff could return to work since he was “90 to 95% well” or only 5 to 10% disabled.
We need not consider the plea of prescription because Plaintiff failed to prove the causal connection between his disability and the accidents in question.
The judgment of the district court is reversed and judgment rendered in favor of Defendant with the dismissal of Plaintiff’s suit; each party to pay his own costs.
Judgment reversed.